UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **JANICE SILER** | : | Case No. 3:19-CV-00150 |
| 5159 Mallet Club Drive | : | |
| Dayton, OH 45439 | : | **Judge** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | |
| | : | |
| **SINCLAIR COMMUNITY COLLEGE** | : | |
| 444 West Third Street | : | |
| Dayton, OH 45402 | : | |
| | : | |
| and | : | |
| | : | |
| **ELIZABETH ORLANDO** | : | |
| 444 West Third Street | : | |
| Dayton, OH 45402 | : | |
| | : | |
| **Defendants.** | : | |

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff Janice Siler, for her Complaint against Defendants Sinclair Community College ("Sinclair") and Elizabeth Orlando, states as follows:

### I.  Preliminary Statement

1. This is a civil rights action arising out of Plaintiff Janice Siler's employment with Sinclair.  Ms. Siler alleges that she was terminated in retaliation for complaints she made of sexual harassment and gender discrimination.

2. Ms. Siler's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the Ohio Civil Rights Act.

3. Ms. Siler seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for both her economic and non-economic injuries. She also seeks punitive damages, equitable relief in the form of reinstatement or front pay, and her reasonable attorney fees and costs in prosecuting this matter.

## II. JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 to secure protections and redress deprivations of rights conferred by Title VII and 42 U.S.C. § 1983. This Court may assume supplemental jurisdiction over Ms. Siler's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from the same nucleus of operative facts as her federal claims.

5. Venue with this Court is appropriate because all or part of the claim for relief arose in the Southern District of Ohio.

## III. PARTIES

6. Plaintiff Janice Siler is a United States citizen and a resident of Montgomery County, Ohio.

7. Defendant Sinclair is a community college located in Dayton, Ohio. Sinclair is a political subdivision organized pursuant to Ohio Revised Code Chapter 3354 and is governed by a Board of Trustees empowered by statute to appoint administrative officers, faculty, and staff. Sinclair is an "employer" as that term is defined under Title VII of the Civil Rights Act of 1964 and the Ohio Civil Rights Act.

8. Upon information and belief, Defendant Elizabeth Orlando is a United States citizen and employee of Sinclair Community College. Ms. Orlando is sued both in her individual and official capacities.

## IV.  ADMINISTRATIVE HISTORY

9. On or about March 19, 2018, Ms. Siler dual-filed an administrative charge of discrimination and retaliation against Sinclair with the OCRC and EEOC (Charge No. DAY 76 (27100) 03192018; 22A-2018-01694C).  She alleged that she was terminated and retaliated against for complaints she made of sexual harassment and gender discrimination.  The EEOC issued a Notice of Right to Sue on May 10, 2019.  Ms. Siler has brought this lawsuit within 90 days of that notice.

## V.  STATEMENT OF THE CASE

10. Sinclair hired Ms. Siler in October 1995 as an office coordinator for the campus police.  Throughout her tenure at Sinclair, Ms. Siler consistently received positive performance reviews, merit-based pay increases, and numerous awards and letters of recognition.

11. In August 2017, after 16 years serving in the Criminal Justice Department as an administrative assistant and due to the retirement of her supervisor, Ms. Siler was transferred to the Management/Marketing Department to work under the Chair of the department, April Carpenter, and the department Dean, Elizabeth Orlando.

12. Ms. Siler was told that she would be sharing an office suite with Professor Rick Andrews and his administrative assistant, Christine Bachman.  Ms. Siler immediately became concerned about working in an office setting with Professor Andrews, because he had a reputation for making inappropriate, sexually charged remarks — which Sinclair employees referred to as "Rick being Rick."

13. Upon her move to the Management/Marketing Department, Ms. Siler was subjected to strange and offensive sexual remarks from Professor Andrews.  For example, Ms. Siler was sitting at her desk and made a statement to herself when Professor Andrews

3

walked by. He asked her who she was talking to, to which she responded, "I guess no one, really, must have been my imaginary friend!" Professor Andrews looked at her, grinned, leaned over her desk, and stated, suggestively, "I have sex with my imaginary friend."

14. On a separate occasion, someone in Ms. Orlando's office had brought in doughnuts. Professor Andrews went to grab a doughnut, looked at Ms. Siler and Stephanie Travis, Ms. Orlando's administrative assistant, and claimed that he was worried that if he ate the doughnuts, he "would not be able to fit into [his] banana sling."

15. On yet another occasion, Professor Andrews yelled from his office, "does anyone out there wanna have sex?" This comment was directed toward the common area, where Ms. Siler and other employees were located.

16. Following these incidents, Ms. Siler approached the Human Resources Department at Sinclair on multiple occasions to request a transfer to open positions in different departments. Her requests were denied.

17. In or about January of 2018, Ms. Siler was speaking candidly with Lois Raches, an employee in Sinclair's Human Resources Department. Because she too had knowledge of Professor Andrews's behavior, Ms. Raches asked Ms. Siler how she was adapting to working with Professor Andrews. Ms. Siler told Ms. Raches about the comments Professor Andrews had made.

18. Ms. Raches reported these comments to her supervisor in Human Resources, which were then relayed to Carol Glaser-Atkins, Sinclair's Deputy Title IX Coordinator. Ms. Glaser-Atkins then conducted an investigation into the allegations against Professor Andrews.

19. During the course of Ms. Glaser-Atkins's investigation, she initiated contact with Ms. Siler in order to obtain further information about Professor Andrews's conduct.

4

Ms. Siler provided responses to all of Ms. Glaser-Atkins's questions and related that she believed Professor Andrews had engaged in acts of sexual harassment which created a hostile working environment. However, out of a fear for retaliation, she expressed to Ms. Glaser-Atkins her discomfort in being named the complainant against Professor Andrews. Rather, Ms. Siler requested that her name be kept confidential. Ms. Glaser-Atkins denied that request and informed Ms. Siler that the investigation and any possible disciplinary action against Professor Andrews would move forward with or without Ms. Siler's consent or her active participation. As a result, the investigation identified Ms. Siler as the chief complainant about Professor Andrews's violations of Sinclair policies prohibiting sexual harassment in the workplace.

20. Ultimately, on March 7, 2018, Ms. Glaser-Atkins's investigation concluded that Professor Andrews had violated Sinclair's Sexual Harassment and Sexual Misconduct Policy, which warranted corrective action against him. The report also revealed that Ms. Orlando had been aware of Professor Andrews's behavior but that she had failed to report such behavior to the Title IX office, as was required by Sinclair policy.

21. Approximately one week later, on March 14, 2018, Ms. Orlando and Janet Jones, Vice President of Human Resources, presented Ms. Siler with a letter recommending her termination from Sinclair. The letter outlined ten alleged deficiencies, including (1) using profanity in the office; (2) referring to a coworker as a "bitch;" (3) leaving her work station for extended periods of time without informing her supervisor; (4) working prior to 8am; (5) lying to Ms. Orlando regarding phone calls made prior to 8am and time spent away from the work area; (6) refusing to take minutes/notes at department meetings; (7) not updating department web pages; (8) taking long lunch breaks; (9) not familiarizing herself with the department's academic programs; and (10)

5

letting calls go to her voicemail when she was sitting at her desk. Prior to receiving this letter, Ms. Siler had not received notice of any of the aforementioned performance deficiencies or any warning that she was at risk of discipline on account of her performance.

22. The foregoing allegations against Ms. Siler were false and were concocted to provide a pretext to terminate her on account of her participation, whether witting or unwitting, in the Title IX investigation which revealed that Ms. Orlando and Sinclair had failed to take action to sanction or prohibit Professor Andrews's conduct as required by Sinclair policy.

23. On March 28, 2018, Ms. Siler received a letter from David Collins, Provost at Sinclair, informing her that he intended to uphold the recommendation of Ms. Orlando to terminate her employment.

24. The acts and/or omissions of Sinclair and Ms. Orlando were taken intentionally, maliciously, and purposefully, with a conscious disregard for Ms. Siler's rights under federal and state civil rights laws to be free from discrimination on account of her gender and from retaliation by reporting to Ms. Glaser-Atkins the substance of Professor Andrews's discriminatory conduct.

25. As a direct and proximate result of Defendants' actions, taken under color of state law, Ms. Siler has suffered and will continue to suffer damages from lost income and benefits, emotional distress, and damage to her professional reputation.

## VI. STATEMENT OF THE CLAIMS

### COUNT 1: GENDER DISCRIMINATION
### (Title VII/Ohio Civil Rights Act)

26. Plaintiff incorporates paragraphs 1 through 25 as if fully rewritten herein.

27. Ms. Siler is a female.

28. Ms. Siler was subjected to unwelcome sexual harassment and disparaging comments based on her gender.

29. The harassment interfered with her work performance by creating an environment that was intimidating, hostile, and offensive.

30. Defendants knew of the harassing conduct but failed to take prompt and corrective action.

## COUNT 2: RETALIATION
### (Title VII/Ohio Civil Rights Act)

31. Plaintiff incorporates paragraphs 1 through 30 as if fully rewritten herein.

32. Ms. Siler engaged in activity protected by Title VII when she protested sexual harassment and gender discrimination by means of a Title IX investigation.

33. Defendants knew of Ms. Siler's protected activity.

34. Defendants terminated Ms. Siler.

35. Defendants' decision to terminate Ms. Siler from her employment was motivated by her complaints of sexual harassment and gender discrimination in violation of Title VII, 42 U.S.C. § 2000, *et seq.*, and the Ohio Civil Rights Act, O.R.C. § 4112, *et seq*.

## COUNT 3: GENDER DISCRIMINATION
### (Ohio Rev. Code § 4112.02(J))

36. Plaintiff incorporates paragraphs 1 through 35 as if fully rewritten herein.

37. Ms. Siler was subjected to unwelcome harassment on the basis of her gender.

38. The harassment was sufficiently severe to affect a term, condition, or privilege of employment.

7

39. Ms. Orlando, by her actions and omissions, aided and abetted the harassment of Plaintiff in violation of Ohio law.

40. Ms. Orlando was aware of the harassment and failed to take appropriate corrective action. In so doing, Ms. Orlando created a sexually hostile working environment.

41. By failing to report Professor Andrews's behavior to Sinclair, Ms. Orlando obstructed and prevented Sinclair and its agents from complying with Ohio law.

42. Ms. Orlando attempted, directly and indirectly, to commit acts declared by Ohio Rev. Code § 4112.02 to be an unlawful discriminatory practice.

43. As a result of the individual defendant's actions, Ms. Siler suffered damages, including lost wages and emotional distress.

## COUNT 4: FIRST AMENDMENT RETALIATION
## (42 U.S.C. 1983)

44. Plaintiff incorporates paragraphs 1 through 43 as if fully rewritten herein.

45. Ms. Siler spoke as a private citizen on a matter of public concern when she provided information to Ms. Glaser-Atkins in connection with a Title IX investigation concerning acts of discrimination in a public institution.

46. The actions of Ms. Orlando in terminating Ms. Siler's employment constituted retaliation for her protected speech as a citizen in connection with matters of public concern in violation of the First Amendment of the United States Constitution.

## **PRAYER FOR RELIEF**

Wherefore, Ms. Siler demands judgment against Sinclair and Ms. Orlando both collectively and separately as follows:

1. An award of compensatory damages for all economic damages suffered by Ms. Siler in an amount to be determined at trial;

2. An award of compensatory damages for all non-economic damages suffered by Ms. Siler in an amount to be determined at trial;

3. For an order reinstating Ms. Siler to her previous position at Sinclair, inclusive of all pay increases and benefits to which she would have been entitled had she not been terminated, or in the alternative, an award of front pay;

4. For an award of punitive damages against Ms. Orlando in an amount to be determined at trial;

5. For an award of Ms. Siler's reasonable attorney fees and costs;

6. For an award of any other relief in law or equity to which Ms. Siler is entitled under the premises.

Respectfully submitted,

/s/ Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)
Daniel J. Treadaway (OH No. 0098000)
MEZIBOV BUTLER
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com
dtreadaway@mezibov.com

*Attorneys for Plaintiff Janice Siler*

## JURY DEMAND

Plaintiff Janice Siler demands that all issues of fact in the foregoing complaint be tried by a jury.

/s/ Marc D. Mezibov
Marc D. Mezibov (OH No. 0019316)
